# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| KHALFANI M. KAMAU | CIVIL ACTION NO. 09-1488-P |
| VERSUS | JUDGE HICKS |
| LOUISIANA STATE POLICE DEPARTMENT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Khalfani M. Kamau ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was filed in the United States District Court for the Middle District of Louisiana on August 14, 2009 and by order transferred and filed in this court on August 17, 2009. Plaintiff claims his civil rights were violated during his arrest and criminal trial proceedings and by prison officials while incarcerated at the Bossier Sheriff's Correctional Facility in Plain Dealing, Louisiana. He names the Director of the Louisiana State Police Department, Shane Sears, the Caddo Parish Sheriff Department, Jamie McLamb, the Twenty-Sixth Judicial District Court, Jeff Cox, Schuyler Marvin, Mike Lawrence, the Bossier Parish Sheriff Department, Charles Gray, Derron Kerry, John Cucci, Jr., the Louisiana Department of Public Safety and Corrections,

Steve Prayder, James LeBlanc, and Larry Dean as defendants[1].

Plaintiff claims that on October 15, 2005, Louisiana State Trooper Shane Sears stopped him on Interstate-20.  He claims Trooper Sears ordered him to exit his vehicle.  He claims he did as ordered and gave Trooper Sears his license and vehicle registration.  Plaintiff claims that at that time he protested the validity of the traffic stop.

Plaintiff claims off-duty Caddo Parish Sheriff Deputy Jamie McLamb then searched his pockets.  He claims Trooper Sears told him that he stopped him for failure to yield to an emergency vehicle and Trooper Nash clocked him going 77 miles per hour in a 65 miles per hour zone.  Plaintiff claims he felt violated and harassed.  He claims he was racially profiled.

Plaintiff claims that while Trooper Sears checked the validity of his documents, Deputy McLamb asked him questions about his trip.  He claims that after 15 minutes, Trooper Sears concluded his license and registration check and informed him that he was going to give him a warning but that his passenger had an active warrant in Texas.  He claims Trooper Sears then asked for permission to search his vehicle and he denied him permission. He claims he did then consent to a weapons' search of his vehicle, but then withdrew his consent when he was told that the K-9 was being called to conduct the search.  He claims Deputy McLamb told him it was too late to withdraw his consent of the search.

Plaintiff claims the K-9 searched his vehicle for 30 minutes and then Trooper Sears

---

[1]Plaintiff also named Joseph Clark, Sr., Randall Fish, Leslie Kelly, Bossier Parish Clerk of Court Cynthia Johnston, the Twenty-Sixth Judicial District Court Indigent Defender Board, Henry N. Brown, and the Louisiana Second Circuit Court of Appeal as defendants in his original complaint.  Plaintiff filed a motion to dismiss these defendants and on June 18, 2012, this court granted said motion.

and Deputy McLamb searched his vehicle for 30 minutes.  He claims the audio recording device was turned off and on during the stop.

Plaintiff claims Deputy McLamb researched the vehicle for ten minutes under the guise of looking for his pager.  He claims the K-9 then searched his vehicle again.  Plaintiff claims the stop and search lasted three hours before the alleged contraband was found. Plaintiff claims he and his passenger were arrested and taken into custody.

Plaintiff claims the Louisiana State Police Department Troop G has established an illicit check point interdiction operation where individuals are targeted based on specific profiles to search vehicles.  Plaintiff claims he was racially profiled because he was a young African American driving a rental vehicle with an out of state license plate.

Plaintiff claims that on January 4, 2006, Judge Jeff Cox, District Attorney Schyler Marvin, Assistant District Attorney Matt Altimus, the Indigent Defender Board, and attorney Walter Gerhardt denied him a preliminary examination.  He claims the preliminary examination was waived without his consent and understanding and exposed him to a trial without probable cause in violation of his equal protection and due process rights.

Plaintiff claims that on February 25, 2008, Judge Cox, District Attorney Marvin, Assistant District Attorney Mike Lawrence, and attorney John Cucci conspired to violate his constitutional rights by allowing John Cucci to represent him when he had pending criminal charges against him.  Plaintiff claims that on March 31, 2008, Judge Cox, District Attorney Marvin, Assistant District Attorney Lawrence, and John Cucci conspired to illegally institute prosecution against him when the court clearly lacked jurisdiction.

Plaintiff claims Bossier Parish Sheriff Deputy Derron Kerry physically assaulted him and forced him to restrict his language in violation of his right to free speech.  Plaintiff claims that on February 8, 2008, he was transferred to the Bossier Maximum Security Facility and given an intake interview by Deputy Kerry.  He claims that during the interview, Deputy Kerry punched him in the face several times for no reason.  He also claims he made him say "yes sir" and "no sir."  Plaintiff claims that since this incident, he has had high blood pressure and swelling of his ankles.

Plaintiff claims that since February 8, 2008, he has been subjected to inadequate medical care.  He claims he requested a complete physical examination but was denied because the facility did not offer complete physical examinations.  Plaintiff claims his overall health deteriorated while incarcerated at the Bossier Parish Maximum Security Facility.  He claims new inmates are not screened for several months for infectious diseases.  He claims that medical staff are not on duty 24 hours a day.

Plaintiff claims the facility is unsanitary.  He claims inmates are only allowed one roll of toilet paper per week.  Plaintiff claims indigent inmates are charged $1.60 for an indigent package every two weeks which includes a pack of toothpaste, bar of soap, one razor, two sheets of paper, and two stamped envelopes.  Plaintiff claims inmates are only given one jumper per week.  He claims inmates must purchase t-shirts, boxers, and socks from the commissary.  Plaintiff claims inmate laundry is washed once a week and inmates must exercise in their jumpers.

Plaintiff claims 75 inmates are housed in a dorm 24 hours a day. He claims the dorm

is overcrowded.  He claims inmates with different custody classifications are housed together.  He claims the eating tables are separated from the bathroom facilities by a three and a half foot wall.  He claims that at times the air smells of sewage and urine.  He claims inmates are not given proper cleaning agents.  Plaintiff claims the bathroom facilities have no urinals.

Plaintiff claims the food served is inadequate.  He claims inmates are served cold cuts five times a week and the cold cuts are high in sodium.  He claims for lunch, inmates are served one slice of bologna, two slices of white bread, 14 grams of vegetables, and 14 grams of beans.  He claims the vegetables are overcooked and therefore lose their nutritional value.  He claims the food is served cold and often kept on serving trays for hours.  He claims inmates are only given one fruit serving a week.  He claims the food is high in starch and sodium.  He claims that the food has caused him to have high blood pressure.

Plaintiff claims inmates do not have ready access to ice, hot water and/or purified water.  He claims a five-gallon cooler of ice and three gallons of hot water are brought to the dorm three times a day to be shared by all 75 inmates.  He claims he had to often drink tap water which contained chlorine.

Plaintiff claims inmates are not allowed outside of the facility for recreation and the recreation system is inadequate.  He claims inmates are confined to their dorms 24 hours a day.  He claims inmates are only allowed outside 15 to 20 minutes at a time and not on a regular schedule.  He claims the lack of exercise contributed to his high blood pressure.

Plaintiff claims there are no religious services for members of the Islamic faith.  He claims that when he expressed concern about the lack of Islamic services, he was retaliated against and humiliated.  Plaintiff claims that on June 23, 2008, he submitted a request form to Warden Gray asking for permission to practice and adhere to the foundations of the Islamic principles of Juman prayer outside the dorm for one hour, one day a week with other Muslim's in a private room.  He claims that on June 24, 2008, Warden Gray denied his request and told him he could practice his faith in the dorm.

Plaintiff claims the only educational classes offered by the facility are GED classes.

Plaintiff claims he was subjected to sleep deprivation.  He claims the lights were turned off at 11:00 p.m. and turned on at 3:00 a.m. Sunday through Thursday .  He claims that on Friday and Saturday the lights were turned off at 11:30 p.m.  He claims that because of this, his eye sight and immune system were weakened.

Plaintiff claims that on July 7, 2008, Deputy Barnet ordered him to pack his personal property because he was being moved.   Plaintiff claims he was escorted to isolation/segregation and detained for three days without reason.  He claims he was placed on suicide watch because a blood pressure pill was found in his property.  Plaintiff claims his property was searched outside of his presence.  Plaintiff claims that on July 14, 2008, he was sentenced to ten days isolation and 30 days canteen/commissary restriction because a blood pressure pill was found in his property.  Plaintiff claims he had no mattress, bedding, clothing, or hygiene products for seven days even though he had high blood pressure and swelling in his legs, ankles, and feet.  He claims he was forced to sleep on the

cold steel bunk and the temperatures were cold.  He claims this is how he was retaliated against for filing a grievance in the administrative remedy procedure regarding religion.

Plaintiff claims that on July 18, 2008, he learned his legal property had been separated from his personal property outside of his presence.  He claims that because of this, he missed his deadline to file an appeal with the Louisiana Second Circuit Court of Appeal on July 23, 2008.  Plaintiff claims the law library and the legal facility were inadequate.

Plaintiff claims that on January 20, 2009, bedding and mattresses were taken from all the inmates which are 95% African American.

## LAW AND ANALYSIS

### Heck Claims

Plaintiff is seeking monetary compensation for alleged unconstitutional conviction and sentence for constructive possession of a controlled dangerous substance.  The United States Supreme Court held that in order to recover monetary compensation for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994).  Heck involved a civil rights claim brought by a state prisoner.  The Court dismissed the Section 1983 suit until plaintiff could demonstrate that

his conviction or sentence had been invalidated.

When a claim comes within the parameters of the <u>Heck</u> teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit.  <u>See</u> <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

Plaintiff is seeking monetary compensation for civil rights violations under Section 1983; therefore, he must prove that his conviction and/or sentence have been invalidated. He has not met this precondition and his complaint must be dismissed until such time that he can demonstrate that his conviction and/or sentence have been invalidated.

**Judge Jeff Cox and the Twenty-Sixth Judicial District Court**

Plaintiff claims Judge Cox violated his constitutional rights by allowing John Cucci to represent him.  Plaintiff also claims Judge Cox illegally instituted prosecution against him when the court lacked jurisdiction and denied him a preliminary examination.  Plaintiff cannot allege claims against Judge Cox and the Twenty-Sixth Judicial District Court.  It is well established that judges enjoy absolute immunity from liability for damages arising out of performance of their judicial duties, regardless of bad faith.  <u>Pierson v. Ray</u>, 386 U.S. 547, 87 S.Ct. 1213 (1967); <u>Stump v. Sparkman</u>, 435 U.S. 349, 98 S.Ct. 1099 (1978).  Acts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and were (3) centered around a case pending before a judge.  <u>Brewster v. Blackwell</u>, 692 F.2d 387, 396-97 (5th Cir. 1982).  The conduct challenged by Plaintiff

unequivocally falls within the judge's authority as judicial officer of the court and in the ordinary exercise of judicial duties.

Accordingly, Plaintiff's civil rights claim against Judge Cox and the Twenty-Sixth Judicial District Court should be dismissed as frivolous.

**DA Schuyler Marvin, ADA Mike Lawrence, and ADA Matt Altimus**

Plaintiff claims District Attorney Marvin and Assistant District Attorney Altimus denied him a preliminary examination.  He also claims District Attorney Marvin and Assistant District Attorney Lawrence violated his constitutional rights by allowing John Cucci to represent him.  He also claims District Attorney Marvin and Assistant District Attorney Lawrence illegally instituted prosecution against him when the court clearly lacked jurisdiction.  Prosecutors have absolute immunity when acting in a quasi-judicial mode.  Imbler v. Pachtman, 424 U.S. 409, 106 S.Ct. 984, 47 L.Ed.2d 128 (1976); Geter v. Fortenberry, 849 F.2d 1550 (5th Cir. 1988).  The Fifth Circuit has repeatedly recognized the purpose of the immunity defense is to protect public officials from undue interference with their duties and from disabling threats of liability.  Geter, 849 F.2d at 1552.  Absolute immunity is immunity from suit rather than from liability.  Elliot v. Perez, 751 F.2d 1472 (5th Cir. 1985).  The Fifth Circuit "has likewise accepted the premise that the protected official should be sheltered from trial and pre-trial preparation as well as liability." Id. at 1478.

The conduct challenged unequivocally falls within the authority of the district attorney and assistant district attorney, as quasi-judicial officers of the court and in the

ordinary exercise of their quasi-judicial duties.   Accordingly, Plaintiff's civil rights complaint against District Attorney Schuyler Marvin, Assistant District Attorney Matt Altimus, and Assistant District Attorney Mike Lawrence should be dismissed as frivolous.

### Attorney John Cucci and Attorney Walter Gerhardt

Plaintiff claims attorney Walter Gerhardt denied him a preliminary examination. Plaintiff claims attorney John Cucci represented him when he had criminal charges pending against him.  He claims John Cucci provided him with ineffective assistance of counsel. He also claims John Cucci conspired to illegally institute prosecution against him when the court clearly lacked jurisdiction. Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.  A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law.  Neither privately obtained nor court appointed defense attorneys act under color of state law for purposes of Section 1983.

Both a retained and a court appointed attorney serve their client, the accused; they do not serve the state.  They serve a private function for their client that follows from the very nature of the attorney-client relationship and for which no state office or authority are needed.  Hence, neither a retained nor a court appointed attorney acts under color of state law and cannot be held liable under Section 1983. See Polk County v. Dodson, 454 U.S. 312 (1981); Ellison v. DeLa Rosa, 685 F.2d 959, 960 (5th Cir. 1982) (citing Polk County, supra); United States ex rel. Simmons v. Zibilich, 542 F.2d 259, 261 (5th Cir. 1976);

Nelson v. Stratton, 469 F.2d 1155 (5th Cir. 1972); Richardson v. Fleming, 651 F.2d 366

(5th Cir. 1981); Mills v. Criminal District Court #3, 837 F.2d 677 (5th Cir. 1988)(citing

Nelson, supra).

Accordingly, Plaintiff's civil rights claims against Walter Gerhardt and John Cucci

should be dismissed as frivolous.

**Deputy Derron Kerry**

Plaintiff claims that on February 8, 2008, Deputy Derron Kerry physically assaulted

him and forced him to restrict his language in violation of his right to free speech.

In Wilson v. Garcia, 471 U.S. 261 (1985), the Court articulated the guidelines to be

used in determining what prescriptive period should apply to Section 1983 claims.  The

Court determined "§ 1983 claims are best characterized as personal injury actions" and the

forum state's statute of limitations applicable to such claims should be used.  Id. at 280.  In

Gates v. Spinks, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased

the test as: "The state statute governing the general tort remedy for personal injuries should

apply to 1983 actions . . ." Gates, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort

actions.  The article subjects delictual actions to a liberative prescription of one year.  See

La. C.C. art. 3492.  The Fifth Circuit qualified this prescriptive period, however, when it

held that "a section 1983 action accrues and the statute of limitations begins to run when

the plaintiff knows or has reason to know of the injury which is the basis for the action."

Watts v. Graves, 720 F.2d 1416, 1417 (5th Cir. 1983).  Finally, prescription on the claim

is tolled while the administrative remedy procedure is pending.  <u>See</u> <u>Harris v. Hegmann</u>,

198 F.3d 153 (5th Cir. 1999).

Plaintiff claims his civil rights were violated by Deputy Kerry on February 8, 2008.

Thus, prescription began to run as to these claims in February 2008.  The above entitled

and numbered complaint was not signed by Plaintiff until July 31, 2009 and it was not filed

by the Clerk of Court until August 2009.  Plaintiff's claims against Deputy Kerry are

therefore prescribed.  Accordingly, Plaintiff's civil rights claims against Deputy Kerry

should be dismissed as frivolous.

**Medical Treatment**

Plaintiff claims he was subjected to inadequate medical care and his overall health

deteriorated.  He claims he did not receive a complete physical examination because the

facility did not offer them.  He claims new inmates are not immediately screened for

infectious diseases.  He believes he may have acquired TB because he suffers from allergy

and respiratory problems and has lost his sense of smell.  He further claims the medical

staff was not on duty 24 hours a day.

 A Section 1983 plaintiff has long been required to plead his case with "factual detail

and particularity," not mere conclusory allegations.  <u>Elliot v. Perez</u>, 751 F.2d 1472, 1473

(5th Cir. 1985); <u>Hale v. Harney</u>, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has

abolished this heightened pleading standard for claims against municipalities, <u>Leatherman</u>

<u>v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 113 S.Ct.

1160 (1993), but the requirement remains firmly in place for claims against individual

public officials.  See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Plaintiff has failed to do so.  Plaintiff failed to state the need for a complete physical examination or the harm caused by not receiving one.  Plaintiff also failed to state the need for a medical staff on duty 24-hours a day or the harm caused to him because the medical staff was not on duty 24 hours a day.

Furthermore, the immediate screening of all inmates for infectious diseases is not constitutionally required. See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir.2001); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at 4 (E.D.La. Oct. 1, 2009).

Accordingly, these claims must be dismissed with prejudice as frivolous and for failure to state a claim on which relief may be granted.

**Classification of Inmates**

Plaintiff claims inmates with different custody classifications are housed together. This is not a claim that this court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds).  Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification.  In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration.  See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

Accordingly, Plaintiff's claims regarding his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Conditions of Confinement**

Plaintiff claims the facility is unsanitary.  He claims inmates are only allowed one

roll of toilet paper per week.  He claims he is only given one jumper per week.  Plaintiff claims inmates exercise in the jumpers which are washed only once a week. He claims inmates must purchase t-shirts, boxers, and socks and a hygiene packet from the commissary.

Plaintiff claims the dorm is over crowded.  He claims the eating tables are separated from the bathroom facilities by a three and half foot wall.  He claims the air smells of sewage and urine.  He claims inmates are not given proper cleaning agents.  He claims the bathroom facilities have no urinals.

Plaintiff claims the food is inadequate.  He claims inmates are served cold cuts five times a week and cold cuts are high in sodium.  He claims the vegetables are overcooked. He claims the food is served cold.  He claims inmates only receive one fruit serving per week.  He claims the good has cause him to have high blood pressure.

Plaintiff claims he often had to drink tap water.

Plaintiff claims the recreation system is inadequate.  He claims inmates are only allowed outside 15 to 30 minutes at a time and not on a regular schedule.  He claims the lack of exercise contributed to his high blood pressure.

Plaintiff claims he was subjected to sleep deprivation because of the lights in the dorm.

Plaintiff filed these claims pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. §

1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment.  Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates.  See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991).  First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).   Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court recently defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979.

Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement.   Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

Plaintiff also claims he was denied adequate recreation.  Specifically, he claims he was denied outside recreation on a regular schedule.  Plaintiff further claims he was denied

adequate food portions.  Specifically, he claims he was given cold cuts five times a week, overcooked vegetables, and fruit only once a week.  He claims his food was served cold. Plaintiff claims he was subjected to unsanitary conditions.  He claims he was given only one roll of toilet paper and one jumpsuit a week and it was washed only once a week.  He further claims he had to buy a hygiene package every two weeks.  Plaintiff further claims there were no underwear issued by the facility.  He claims the eating tables were seperated from the bathroom facilities by a three and a half foot wall.  He claims the inmates were not given proper cleaning agents.  He claims there were no urinals in the bathrooms.  He claims he was forced to drink tap water.  He claims he was sleep deprived because of the lights in the dorm.

After considering the totality of the specific circumstances that constitute the conditions of Plaintiff's confinement, this Court finds that the facts alleged do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities.  See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.  The Court finds that Plaintiff's claims standing alone, simply do not rise to the level of cruel and usual punishment as defined by the jurisprudence.  Inmates do not have a  protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation ." Lewis v. Smith, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir.2001); Stewart v. Winter, 669 F.2d 328, 336 n. 19 (5th Cir.1982); see also Martin v. Scott, 156 F.3d 578, 580 (5th Cir.1998) (affirming limits on recreation time). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods

without the opportunity for regular physical exercise." Lewis, 2001 WL 1485821 at *1 (citation omitted).  Plaintiff does not claim he was denied all exercise or that he could not exercise in his dorm.  Furthermore, he has made the vague, conclusory claim that the inadequate outdoor recreation time contributed to his high blood pressure.

Plaintiff claims his diet was inadequate.  The Constitution mandates that inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Green v. Ferrell, 801 F.2d 765, 770 (5th Cir.1986) (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)) (footnote omitted); See also Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir.1996) (per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food.").  "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" Talib v. Gilley, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation ." Id.

Here, Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id.  He did not claim that he was at all undernourished or that he lost weight as a result of the complained of diet.  Plaintiff offered only conclusory allegations that the prison diet was inappropriate and that is insufficient to state a claim for which relief might be granted.

Furthermore,  the  deprivations  alleged  by  Plaintiff  regarding  the  unsanitary

conditions, toilet paper, hygiene packets, and tap water simply do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive Plaintiff of life's basic necessities.  See Wilson, 501 U.S. at 298, 111 S.Ct. at 2324.  Plaintiff does not allege that he did not have toilet paper, hygiene products, or underwear, only that it was not issued by the facility or was issued in limited quantities.  Furthermore, Plaintiff failed to allege that he sustained any harm or injury as a result of his exposure to the complained of conditions.  In this case, Plaintiff states no facts that would satisfy the threshold requirements for an Eighth Amendment violation.  Thus, the Court does not consider the deprivations alleged to be sufficiently serious.

Plaintiff claims he suffered sleep deprivation because the lights were only turned off for approximately four hours a night.  In Chavarria v. Stacks, 102 Fed.Appx. 433, 2004 WL 1485076 (5th Cir. 2005), the Fifth Circuit held that a policy of constant illumination was reasonably related to the legitimate penological interest of guard security and enforcement of the policy did not violate the Eighth Amendment.  Thus, Plaintiff cannot show that this deprivation is unnecessary and unwanton and a violation of the Eighth Amendment.

Accordingly, the conditions alleged do not rise to the level of cruel and unusual punishment and should be dismissed with prejudice as frivolous.

**Religious Services**

Plaintiff claims there are no religious services for members of the Islamic faith.  He claims that when he expressed concern about the lack of Islamic services, he was retaliated against and humiliated.  Plaintiff claims that on June 23, 2008, he submitted a request form

to Warden Gray asking for permission to practice and adhere to the foundations of the Islamic principles of Juman prayer outside the dorm for one hour, one day a week with other Muslim's in a private room.  He claims that on June 24, 2008, Warden Gray denied his request and told him he could practice his faith in the dorm.  Plaintiff claims Christians were allowed to congregate and meet with local clergy and perform rituals such at baptism.

As previously discussed, the prescriptive period is one year and  "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." Watts, at 1417.

Plaintiff claims his civil rights were violated by Warden Gray on June 24, 2008 when he denied his request to practice his religious faith.  Thus, prescription began to run as to these claims in June 2008.  The above entitled and numbered complaint was not signed by Plaintiff until July 31, 2009 and it was not filed by the Clerk of Court until August 2009.   Plaintiff's claims against Warden Gray are therefore prescribed.  Furthermore, Plaintiff does not allege that Warden Gray forbid him from practicing his faith or prevented outside clergy from conducting religious services.  In fact, he admits that Warden Gray told him he could practice his faith in the dorm.

Plaintiff also asserts a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which was passed by Congress in 2000 to provide for "a broad protection of religious exercise, to the maximum extent permitted by the terms of [the] Act and the Constitution." 42 U.S.C. § 2000cc–3(g).  The relevant portion of RLUIPA states: No government shall impose a substantial burden on the religious exercise of a person

residing in or confined to an institution .... even if the burden results from a rule of general applicability, unless the government demonstrates the imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-l. The standard under RLUIPA "poses a far greater challenge than does <u>Turner</u> to prison regulations that impinge on inmates' free exercise of religion. <u>Freeman v. Texas Dept. of Criminal Justice</u>, 369 F.3d 854, 858 n. 1 (5th Cir.2004).

Plaintiff must demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise. <u>Adkins v. Kaspar</u>, 393 F.3d 559, 567 (5th Cir.2004). This requires the Court to answer two questions: (1) Is the burdened activity a "religious exercise," and if so (2) is the burden "substantial"? <u>Id</u>. The plaintiff has the burden of persuasion on these two elements. <u>Id</u>.; citing to 42 U.S.C. § 2000cc-s; 146 Cong. Rec. S7776 (July 27, 2000). The government then has the burden of persuasion that the application of its substantially burdensome practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. <u>Id</u>.

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." <u>Atkins</u>, 393 F.3d at 567. Plaintiff does not argue that Juman prayer outside the dorm in a private room with other Muslims is an important element of the free exercise of his religion.

Whether the denial of Juman prayer in a private room with other Muslims is a substantial burden is determined as follows:

For purposes of applying RLUIPA in this circuit, a government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. [ ] The effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.

On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden [ ] if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

Adkins, 393 F.3d at 569–570.

Plaintiff does not assert that the denial of Juman prayer in a private room amounts to a "substantial burden" because it modifies his religious behavior. Thus, the court finds that Plaintiff has not met his burden of persuasion that the denial of Juman prayer in a private room with other Muslims is a substantial burden on the Plaintiff's free exercise of his religion.

**Classes**

Plaintiff claims that the facility only offered GED classes.   In order to state a constitutional claim for either a procedural or substantive due process violation, Plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir.2000); accord Sandin v. Conner, 515 U.S. 472, 481–83, 115 S.Ct. 2293 (1995) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life"); <u>Bryan v. City of Madison</u>, 213 F.3d 267, 274 (5th Cir.2000) (property interest).  However, neither the Due Process Clause, nor any other provision of the Constitution affords inmates the constitutional right to educational or rehabilitative programs or services. <u>Beck v. Lynaugh</u>, 842 F.2d 759, 762 (5th Cir.1988); see also <u>Smith v. Boyd</u>, 945 F.2d 1041, 1043 (8th Cir.1991) (prisoners do not have a constitutional right to "social services."); <u>Newman v. State of Alabama</u>, 559 F.2d 283, 292 (5th Cir.1977), rev'd in part on other grounds sub nom., <u>Alabama v. Pugh</u>, 438 U.S. 781, 98 S.Ct. 3057 (1978) (prisoners do not possess a protected liberty interest in educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive); <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d 48, 49 (5th Cir.1995) (no federal constitutional right to participate in an education or rehabilitative program while incarcerated).

Finally, Defendants' alleged failure to provide Plaintiff with the types of services and programs he desires does not constitute cruel and unusual punishment in violation of the Eighth Amendment. The lack of rehabilitative programs does not by itself constitute cruel and unusual punishment, nor does the Eighth Amendment require the provision of every amenity needed to avoid mental, physical, or emotional deterioration. See <u>Alberti v. Klevenhagen</u>, 790 F.2d 1220, 1228 (5th Cir.1986), citing, <u>Newman v. Alabama</u>, 559 F.2d 283, 291 (5th Cir.1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3144, 57 (1978).

Accordingly, this claim should be dismissed with prejudice as frivolous.

**Segregation**

Plaintiff claims that on July 7, 2008, he was detained in isolation for three days without reason.   Plaintiff claims that on July 14, 2008, he was sentenced to ten day isolation and complains of his conditions during that time.

Plaintiff claims his civil rights were violated on July 7, 2008 when he was placed in isolation for three days and on July 14, 2008 when he was placed in isolation for ten days.  Thus, prescription began to run as to these claims on July 14, 2008.  The above entitled and numbered complaint was not signed by Plaintiff until July 31, 2009 and it was not filed by the Clerk of Court until August 2009.   Plaintiff's claims are therefore prescribed.   Accordingly, Plaintiff's claims lack an arguable basis in law and should be dismissed with prejudice as frivolous.

**Access to the Courts**

Plaintiff claims the law library and the legal facility were inadequate at the Bossier Sheriff's Correctional Facility.  Plaintiff also claims that on Prisoners have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).  However, this constitutional guarantee is not without limitation.  Lewis v. Casey, 518 U.S. 343 (1996)  (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).  In Lewis v. Casey, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in Bounds v. Smith, 430 U.S. 817, (1977) which  is the source of a prisoner's constitutional right to "meaningful access to the courts." While the Supreme

Court reaffirmed a prisoner's right of access to the courts in <u>Lewis</u>, the Court limited the parameters of <u>Bounds</u> and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation.  In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing. <u>Lewis</u>, 116 S.Ct. at 2179.  The Court used the analogy of a prisoner who is denied access  to that of a healthy prisoner who has been deprived of medical treatment.  In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983.  The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct.  <u>Ruiz v. United States</u>, 160 F.3d 273, 275 (5th Cir. 1998); <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous.  Clearly, Plaintiff has not satisfied the "actual injury" requirement.  Plaintiff has failed to demonstrate that he lost the right to commence, prosecute or appeal any suit as a result of the alleged denial of access to the law library.  He admits that he was represented by an attorney as to his charge.  Furthermore, Plaintiff's complaint in this Court reveals on its face that he was able to clearly present his claims to this Court.  Thus, he has failed to state any actual injury.   Accordingly, Plaintiff's claims

should be dismissed with prejudice as frivolous.

## Discrimination

Plaintiff claims that on January 20, 2009, bedding and mattresses were taken from all the inmates which are 95% African American because they were under their blankets. To prove a cause of action under 1983, Plaintiff must demonstrate that prison officials acted with a discriminatory purpose. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995). "Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." Id., citing United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992).

Plaintiff has failed to allege a discriminatory purpose.  Plaintiff states no facts that indicate Defendants intended to adversely impact his race.  Rather, Plaintiff rests his claim only on his personal belief that discrimination played a role in the punishment of all inmates for being under their blankets.   Accordingly, Plaintiff has failed to allege a viable equal protection claim and this claim should be dismissed as frivolous.

## Property

Plaintiff claims that on July 18, 2008, he learned that his legal property was separated from his personal property and as a result he missed a deadline to file an appeal. The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights.  See id. at 542, 107 S. Ct. at 1916.

However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.  See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979).  A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie.  "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986).  Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated.  See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).  Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988).  Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent.  See La. Civ. Code art. 2315.  Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint seeking monetary damages for his alleged unconstitutional arrest, conviction and sentence be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met, and that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 9th day of September  2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE